JULIUS GAMM, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 17159.   Promulgated February 25, 1929.

*C. M. Pasquier, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

**OPINION.**

LITTLETON : All of the evidence in this case was taken on depositions. The petitioner testified that he did not realize any profits from his general merchandising business in 1920 and 1921. The person who prepared petitioner's returns for those years testified that he is "familiar with the preparation of income tax returns" and that the returns for 1920 and 1921 " properly reflect the books." That sums up all of the evidence as to the first issue. We realize, of course, that petitioner, in assuming the burden of proof, ·is forced, under the circumstance of lost books, to resort to secondary evidence; but we are not satisfied, however, that the petitioner has, with the evidence given us, exhausted his resources in that respect. Certainly evidence of the sort adduced is far from convincing that the Commissioner erred in his determination.

As to the second issue, the disallowance by the Commissioner of expenses of $565 claimed in the return for 1920, no evidence whatever was introduced to show error. The Commissioner's determination, therefore, will not be disturbed.

There appears to be error in the premises upon which the Commissioner determined that petitioner realized a profit of $9,588 from the sale of his one-fourth interest in a certain oil lease to the Claiborne-La., Oil Co., Inc., in 1920. The parties apparently agree that the cost to the petitioner of this interest was $412. However, the Commissioner's determination is premised upon a selling price of $10,000 cash, whereas the evidence is conclusive that what the petitioner received was $7,500 par value of capital stock of the Claiborne-La., Oil Co., Inc. We are not satisfied though that the profit to petitioner in this transaction was less than what the Commissioner determined it to be. The petitioner contends that the fair market value of the stock was not more than the cost to the petitioner of his leasehold interest, to wit, $412. However, he testified that at the particular time there was a boom in the oil field in which the land covered by the lease was situated, and that he sold a part of this stock in 1920 for $892.50. He testified that he could not remember what part of the stock received was involved in the latter transaction, but he was positive that he had a considerable amount of the stock left. In his return for 1920, the petitioner reported the sale of 750 shares of Claiborne-La., Oil Co. stock for $892.50, which was at the rate of

$1.19 per share. However, we do not know the total number of shares of this stock which petitioner received in the first place, or the par value per share, so that this sale is not helpful in determining the probable value of the stock petitioner received for his leasehold interest. It does though cast considerable doubt upon the petitioner's contention, since within the year of the exchange of the leasehold interest for stock petitioner sold a part of that stock at a price which is twice the cost to him of his leasehold interest. Evidence as to events which took place subsequent to the exchange, such as the liquidation of the Claiborne-La., Oil Co., without any return to the stockholders, sheds no light on the probable value of the stock received for the leasehold interest, for we have not the remotest idea as to when that event occurred.

*Judgment will be entered for the respondent.*