José B. López, Sucrs., *S. en C.,* Petitioner, *v.* Tax Court of Puerto Rico, Respondent.

No. 48. Argued May 28, 1945.—Decided July 6, 1945.

180

*Rafael* and *Juan E. Soltcro Peralta* for petitioner. *Jesús A. González, Acting Attorney General (Julio Suárcz Garriga, also Acting Attorney General,* on the brief), and *Ramón Gandía Biscombe, Deputy Attorney General,* for intervener, Treasurer of Puerto Rico, respondent in the main proceeding.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The petitioner—a mercantile partnership engaged in the business of selling groceries at wholesale retail—timely filed its income tax returns for the years 1936, 1937, 1938, and 1939. On June 28, 1941, the Treasurer of Puerto Rico notified it of a deficiency; and the petitioner thereupon requested a reconsideration which was denied by the Treasurer.

In its appeal to the Tax Court of Puerto Rico, the petitioner alleged:

1. That the Treasurer erred in estimating a net profit of three (3) per cent on the amount of the sales, disregarding the actual items of expenditure as the same appeared from the account books of the taxpayer.

2. That the Treasurer acted arbitrarily in disregarding the account books of the taxpayer and in using a method which is justified only in cases where the taxpayer has no books or data from which a fair computation of the tax due can be made.

The Treasurer answered that, in order to determine the net profit, he took as a basis the profits reported in the returns for 1934, 1936, and 1937 for the same business; that

the books kept by the partnership were incomplete, as there were no inventory books, invoice books, sales books, and expense vouchers; that the books were not kept in a proper form; and that for those reasons the Treasurer was entitled to determine the profit in such manner as he deemed proper.

On December 15, 1944, the Tax Court rendered a decision dismissing the appeal; and upon a reconsideration being denied, the petitioner made a payment under protest and instituted the present certiorari proceeding. In support thereof it urges that the Tax Court committed the following errors: (1) It disregarded the books of account and expert testimony introduced by the taxpayer; (2) it accepted the procedure followed by the Treasurer in determining the taxable income; and (3) it refused to order the Treasurer to produce the report of the investigating agent showing the procedure used in determining the taxable income.

In the record before us there is a stipulation signed by the parties, in which the latter agreed to submit the case for decision by the court upon the books introduced in evidence and upon the "memorandum of sporadic tests of the books," prepared by Alejandro Vázquez, an accountant, at the request of the court.

The first question to be determined is whether the Tax Court, in rendering its decision, disregarded or failed to take into consideration the account books and expert testimony introduced by the petitioner.

From the transcript of evidence submitted to us, it appears that the appellant partnership introduced the following oral evidence:

Alejandro Vázquez, an accountant of the firm of José B. López, Sucrs., *S. en C.*, testified that for the purpose of the present case, he had examined the books and the method of accounting employed by said firm; that said method of accounting is adequate for determining the taxable net income; that the concern kept a cash book, a day-book, a general

journal, a purchase journal, and in some years it has used a sales book and in others the invoices as a record of sales, and a general ledger; that the concern kept those books during the years 1936 to 1939, inclusive; that he made his investigation on the basis of those books and also had before him the auxiliary books, clients' ledger and creditors' ledger and documents showing the authenticity of the entries made in the books; that those books and documents were sufficient to lead him to the conclusion that the books were regularly kept and that the entries were correct; that he checked up the returns filed by the partnership for the years 1937, 1937, and 1939 but he was unable to do it in respect of the year 1936 because the corresponding account books had been submitted to the Board of Review and Equalization and were lost there; that the evidence submitted to him was, in accordance with the rules of accounting, sufficient to determine the net income; that the Treasurer was not justified in ignoring or disregarding the books and documents introduced by the taxpayer for the determination of its net income during those three years; that the Treasurer rejected the whole evidence and "then used a very simple method, which consisted of computing three (3) per cent of the gross sales and determining that amount as the taxable net income"; that the method employed by the Treasurer was not correct because he accepted the sales as reported in the returns but not the remaining evidence introduced by the taxpayer consisting of check stubs and invoices which were sufficient to establish the income correctly; that when making an audit of a business, an accountant does not call for all the receipts, invoices, and original papers but he accepts some of those documents and then makes tests in respect of certain months in order to audit the whole year, which practice is called "spot check"; that that was the method employed by the witness; that he could not understand why the Treasurer accepted the sales and rejected all of the remaining evidence;

that the books examined by him were those pertaining to the years 1937, 1938, and 1939, which were introduced in evidence in the Tax Court, and that he found that the entries contained in said books were made regularly and correctly.

At the close of the testimony of the witness Vázquez, the appellant introduced in evidence its books of account. The court ordered the witness to make one or two of the so-called "spot checks" and to submit his report thereon in order to verify whether the books contained sufficient data for determining the net income without resorting to any formula.

Rufo Hernández, managing partner of the petitioning firm, testified: That the books pertaining to the year 1935-36 were sent to the Board of Review and Equalization for examination in connection with a case which the partnership had submitted to said Board and was pending there. After the case was finished, they sent for the books, but the same could not be found and were never returned. The return for the year 1936 had been prepared with data taken from the books that were lost. In 1936, when the partnership was formed, and in the succeeding years the same method of accounting was used. The return filed for that year was in accord with the entries and the facts and showed the income actually received during the year.

Besides said oral evidence, the appellant partnership introduced the report of the expert accountant Alejandro Vázquez regarding the tests and trials made by him, by order of the court, in connection with the account books of the partnership.

After adverting to seven specific tests, said accountant reached the conclusion that "each and all of the books have been kept correctly and in accordance with the generally accepted principles of accounting."

The Treasurer failed to introduce any evidence to support his allegations that the books were incomplete and were not kept in proper form.

After examining the books which had been submitted to it, the Tax Court reached the following conclusion:

"From the evidence presented to this court, it can not be determined what was the taxable net income which the appellant, opportunely and in the corresponding returns, set forth as having been received, nor the one which was actually received."

The court in its opinion points out the deficiencies which it found in the books, and it expressly states that there is nothing in the latter with respect to the transactions for the year 1935–36; "that the year 1938–39 is the only one as to which there is no lack of data or entries relating to the business of José B. López, Sucrs., S. en C., in its ledger day-book, cash book, and invoice book"; and that as regards the remaining years, the books are incomplete.

The errors assigned to the effect that the books and expert testimony had been disregarded was not committed, since the record shows that the respondent court took them into consideration and found that the books were incomplete and insufficient to establish that the net income set forth in the return was correct.

The second question for decision is whether the procedure followed by the Treasurer in determining the taxable net income was in accord with the law.

The Income Tax Act provides as follows:

"Section 14(b). The net income shall be computed upon the basis of the taxpayers annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Treasurer does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 3 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

Let us see now what was the method used by the Treasurer in computing the taxable net income for each of the four years involved in this case.

In his answer to the petition for appeal, the Treasurer alleged that he "had not fixed arbitrarily the estimated net profit of 3 per cent on the sales"; and that "he did it after making a study of the various net profits set forth in the return for 1934 *for this same business,* by the firm of J. B. López, Inc., and in the returns for 1936 and 1937."

From the transcript of the evidence it does not appear that the Treasurer offered any evidence to show that the computation had been made in accordance with the method which in his opinion clearly reflected the taxable net income. Notwithstanding this lack of proof as to the method used in determining the net income, the Tax Court in its opinion stated the following:

"It should be explained that the Treasurer determined the deficiencies notified to the appellant for the years in question on the basis of 3 per cent of the sales made according to the income tax returns submitted by José B. López, Sucrs., S. en C.

"\* \* \* \* \* \* \*

"In view of the facts and circumstances of this case, we think that the Treasurer has not acted arbitrarily in determining the tax which should be paid by the appellant. See the case of *Armour & Co. v. Sancho, Treas.,* 57 P.R.R. 507.

"The method used by the Treasurer in determining the deficiencies against the taxpayer can not, in our opinion, be classified as one which *clearly* reflects the taxpayer's net income. But it should be borne in mind that, no matter how good any method may be, the net income can not be *clearly* determined if there are not sufficient data therefor. A certain amount of discretion and power to reach reasonable conclusions in cases in which there are involved accounts and data regarding past events, or things which have existed in past, must be acknowledged in favor of the Treasurer. In the instant case, the Treasurer has accepted as correct the gross income reported by the taxpayer, and *he has made use of a coefficient or rate of interest which, in our opinion, is rigid and mechanical;* but, in the absence of proof to the contrary, and under the circumstances of this

case, we must suppose that the same *is reasonable and represents an average obtained or determined on the basis of his experience in connection with many other cases of a like character."* (Italics ours.)

The findings made by the Tax Court as to the method employed by the Treasurer are not supported by the evidence and are in conflict wtih the allegations of the Treasurer himself. We have already seen that that officer alleged that he estimated the net profit for each of the four years at 3 per cent of the sale made during said years, and that he did this after making a study of the net profits set forth in the return for 1934, *for this same business* of the petitioner, and in the reports for 1936 and 1937. In other words, the Treasurer considered that if the business of the petitioner had yielded profits during the year 1934–35—which is not involved in the present controversy—and also during the years 1935–36 and 1936–37, he was entitled to fix arbitrarily a coefficient or rate of interest to be applied to those two years and similarly to the years 1937–38 and 1938–39, even though the business may have resulted in losses for the two years last-above mentioned.

The coefficient or rate of interest applied by the Treasurer is not only rigid and mechanical but also arbitrary and unjust. It is manifestly arbitrary and unreasonable to assume that if the business of the petitioner yielded profits in 1935, 1936, and 1937, it must necessarily have yielded them also in 1938 and 1939. The evidence showed that the account books pertaining to the year 1935–36 were not produced because they had been lost in the Board of Review and Equalization which was presided by the Treasurer himself. Notwithstanding the lack of said books, the Treasurer accepted as true the returns for the year 1935–36, using the sales reported as a basis for imposing the tax for that year; and the profits, for determining a tax rate applicable to all the years in controversy.

The respondent court, after examining the books intro-
duced in evidence, found "that the year 1938–39 is the only
one as to which there is no lack of data or entries relating
to the business of José B. López, Sucrs., *S. en C.,* in its
ledger, daybook, cash book, and invoice book." Neverthe-
less, the Treasurer disregarded all those data and entries,
and, taking as a basis the sales made during that year, as-
sessed the tax by applying the rigid, mechanical, and arbi-
trary rate of 3 per cent on the total sales.

From all the foregoing it is inferred that the respondent
tribunal erred in finding, as it did, that the tax rate of 3
per cent on the amount of the sales as applied by the
Treasurer "represents an average obtained or determined
on the basis of his experience in connection with many other
cases of a like character." Such finding is not supported
by any evidence and is contrary to the allegations of the
Treasurer himself, who admits that the tax rate of 3 per
cent was fixed by taking as a basis the net profits yielded in
previous years by the same business of the petitioner.

Counsel for the Treasurer devote a large portion of their
brief to the defense of the percentage method and maintain
that the latter is the alternative method which must be used
for the computation of the net income where the books of
account of the taxpayer are incomplete and do not clearly
reflect his profits. We agree with the Treasurer that said
method is acknowledged by the authorities as being just and
reasonable; and if the Treasurer had used it in the present
case there is no doubt that our decision herein would be dif-
ferent.

From the work "Federal Tax Service," Prentice Hall
(vol· I, 1944, p. 6015, § 6005), we copy the following:

*"Determination of net income by percentage method.*—In cases
where the taxpayer has incomplete books of account or other records
from which net income can not be determined it is the practice
of the Commissioner to apply a certain percentage, corresponding to
that of similar businesses, to the gross sales or receipts. Although the

Board of Tax Appeals has approved numerous deficiencies arrived at by the application of the percentage method and has disallowed others, it has not laid down any general rules on the subject. The attitude of the Board on this subject is clearly shown by the following extract from its opinion in Moses P. Ginzburg, 14 B. T. A., 324:

"'While we recognize the injustices that may spring from determining taxable income by a percentage method, we must also recognize respondent's (Commissioner's) duty to determine the tax due, and, in the absence of information providing the basis for a different method, we must approve the determination made.'"

In the case at bar, the Treasurer did not determine the net income for each of the four years by taking as a basis the percentage of profits or net income produced *by other similar businesses* during each of those four years. He did not use the alternative percentage method—a just and reasonable one—but the rigid, mechanical, and arbitrary method which consisted in using the average percentage of the profits received during the years in which there were such profits and applying the same equally to all the years in question, even to those years during which the taxpayer sustained losses according to its allegations.

Where the Treasurer is compelled by the circumstances of a case to resort to the percentage method in order to determine the net income of the taxpayer, it is incumbent on the latter to prove that the computation made in accordance with said method is erroneous. See the case of *Julius Kamm,* 15 B.T.A. 594, affirmed in 39 F. (2d) 73. In the instant case, from the admissions of the Treasurer and the findings of the respondent court, it clearly appears that the percentage method was not the one used in determining the net income of the petitioner.

For the reasons stated we are of the opinion that the decision sought to be reviewed should be set aside and the case remanded to the Tax Court for further proceedings not inconsistent with this opinion.

Mr. Justice De Jesús did not participate herein.